## SHUTTLES v. BUTCHER. (No. 2085.)

Court of Civil Appeals of Texas. El Paso. Dec. 8, 1927.

Rehearing Denied Jan. 5, 1928.

1. Corporations ☞438—That corporation unlawfully holds land not required in business does not make title void.

The fact that a corporation unlawfully holds lands not required in its business does not make the title thereto void, but it is good and binding as to all the world except the state.

2. Adverse possession ☞115(4)—In trespass to try title, whether plaintiff and those in privity had had possession for 10-year period held for jury (Vernon's Sayles' Ann. Civ. St. 1914, art. 5682).

In trespass to try land title, whether the plaintiff and those in privity had had possession for the 10-year period required by Vernon's Sales' Ann. Civ. St. 1914, art. 5682, to preclude others raising the question of his right to the land, *held* a question for the jury.

3. Adverse possession ☞43(4)—Land may be held in privity with predecessors, though not included in deed, if there be actual transfer of adverse possession (Vernon's Sayles' Ann. Civ. St. 1914, art. 5682).

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5682, relative to the period of adverse possession precluding another from questioning the possessor's right to land, land may be held in privity with one's predecessors though not included in a deed, if there be actual transfer from one to the other of adverse possession.

4. Trial ☞191(4)—Refusing instruction as to land ownership assuming point in issue held not error.

In trespass to try title, court's refusing to give instruction which assumed a point in issue as to land ownership *held* not error.

5. Waters and water courses ☞121—One constructing roof so as to discharge water on adjoining land is guilty of trespass, though water falls first on own premises and flows to adjoining land.

One who constructs a roof in such a way that it will collect and discharge rainwater on adjoining land is guilty of trespass and liable for resulting damages therefrom, even though water falls first on his own premises, where it accumulates and then flows on to the adjoining premises.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Waters and water courses ⊜124—Continuing trespass from rainwater being discharged from building onto adjoining land is private nuisance entitling adjacent owner to injunction.**

Continuing trespass from rainwater being discharged from the building on one lot onto adjoining land owned by another is a private nuisance, entitling the adjacent owner to injunction restraining its maintenance so that the rain falling upon the neighbor's property will not injure other's property.

**7. Appeal and error ⊜1046(5)—Court's remarks to defendant and witness in jury's presence relative to pert answers held not reversible error, where not shown to have influenced jury.**

In trespass to try title, the court's remarks to defendant and to another witness for defendant, in the jury's presence, relative to answers given by such persons being smart or pert, *held* not reversible error, where it was not shown that the court's remarks influenced the jury.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Suit by W. T. Butcher against George E. Shuttles. Judgment for plaintiff, and, from an order overruling his motion for a new trial, defendant appeals. Affirmed.

Wm. H. Flippen and Jno. T. Gano, both of Dallas, for appellant.

Baskett & DeLee, of Dallas, for appellee.

WALTHALL, J. W. T. Butcher brought this suit against George E. Shuttles in trespass to try title, for damages actual and exemplary, and prayed for injunction.

Plaintiff alleged that he was the owner of a portion of lots Nos. 6 and 7, in block No. 13, of University Place addition to the city of Dallas, Tex.; said lot or tract of land being 50 by 143 feet in dimensions, facing 50 feet on the north side of Herschell street, and extending back between parallel lines 143 feet to an alley.

The property is further described by metes and bounds which we need not here state. It is alleged that at the time plaintiff acquired said property it was inclosed on three sides (that is, on the east, the west, and the back, side) with fences; that his deed thereto called for and purported to convey said lot No. 6, in said block No. 13 of said addition, but said described tract of land was delivered to him as the land and premises purchased by him; that said lot has been for 21 years inclosed by said fence which belonged to said lot, and is the property of plaintiff and was at the time of the happening of the matters complained of; that plaintiff also had on said tract of land at said time a residence house, a garage, and storage house (stating its location), and a concrete driveway for his automobiles extending from said garage along the east side of said tract of land to Herschell street, in the front. Plaintiff alleges that he had been in peaceable and adverse possession of said tract of land, and pleaded the statutes of limitation of 3, 5, and 10 years. He alleged that on the 15th day of December, 1925, defendant, without right or authority of law, willfully and maliciously tore down his fence along the east side of said lot and pulled down and removed the posts of said fence, tore up and destroyed his concrete driveway, and tore off and destroyed one side of his garage, and removed the door and portion of the roof, all located on his said lot; the petition alleged the several values of said property so destroyed and the damages sustained.

Plaintiff alleged that defendant had constructed on the premises adjoining his, and to the east, a four-story brick apartment house of large dimensions with underground basement, and excavated a portion of plaintiff's said land, and had built the west wall of said apartment house and basement on his said tract of land, thus appropriating a strip of about 3 or 4 inches wide along the side thereof, and alleged the value of said strip to be $100, and the damage at $100; that in constructing said apartment house defendant splashed plaintiff's residence with plaster, mortar, and paint, thus rendering it necessary that plaintiff repaint his house, and stated the damage.

Plaintiff alleged that said apartment house is built with a flat roof, without eaves, and the rainwater is conducted from the roof through down spouts; that defendant has willfully and with intent to injure and damage plaintiff and his said property so built two down spouts from the roof of said apartment house down into an open space (describing same) so that when it rains the rainwater caught on the roof of said apartment house will be and has run onto and flooded plaintiff's premises and garage, and running under his house and remaining for hours several inches deep; that said condition is a permanent one, and the same injuries and damage will continue at each rain. Plaintiff alleged said damages at $2,000, and that by reason of all of the foregoing matters complained of he has sustained actual damages in the sum of $3,250.

Plaintiff alleged that by reason of the matters stated he ought to recover exemplary damages in the further sum of $5,000. Plaintiff restates many of the acts of the defendant as above, and says that defendant has threatened to and will continue to trespass upon plaintiff's premises, and that said injuries will work irreparable injury to plaintiff and his said property, and his enjoyment thereof, and that the court in this cause having granted a temporary injunction plaintiff prays that same be made permanent, and

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that he have a mandatory injunction requiring defendant to remove and so construct said down spouts and his said premises so that the rainwater from his said house will not be conducted over, on or across plaintiff's premises, prays for judgment for the title and possession of his said premises, and for his said damages actual and exemplary.

Defendant filed his first amended original answer, motion to dissolve the temporary injunction, and cross-action, wherein defendant excepted to certain portions of plaintiff's petition; pleaded ownership of the land in controversy (that is, the whole of lot No. 7), ownership of all of the land covered by the apartment building and the strip running north and south and approximately 5 or 6 feet west of the apartment building; specially denied that he in any wise destroyed or attempted to destroy or remove any property of plaintiff from plaintiff's property, and that he removed property only from his own land, after proper notice to plaintiff to remove same, and after plaintiff had refused to do so. Defendant specially denied plaintiff's limitation pleas; denied that plaintiff has sustained any of the damages alleged; denied that he had acted willfully, maliciously, or wantonly, but acted in good faith in an attempt to preserve his property and rights. Defendant pleaded a cross-action in trespass to try title to lot No. 7.

Plaintiff filed a supplemental answer embracing exceptions and general denial.

The case was submitted to a jury upon special issues. Upon issues submitted, the jury found:

(1) W. T. Butcher, on December 15, 1925, did use and occupy a portion of lot No. 7 in block 13, of the University Place addition to the city of Dallas.

(2) The dimensions of said portion of said lot No. 7 that he (Butcher) so used and occupied at said date were 2 feet 6 inches in front by 4 feet on back end of lot.

(3) W. T. Butcher and those under whom he held said portion of said lot No. 7 did hold the peaceable and adverse possession of same, using and enjoying the same, for more than 10 years prior to said 15th day of December, 1925.

In response to issues 4, 5, 6, 7, 8, 9, 10, and 11, the jury found that defendant destroyed a fence, one runner of a concrete driveway, one side of a garage, and the roof and door thereof, all on the strip of ground in controversy, splashed plaintiff's house with plaster, mortar, or paint, and assessed the several amounts of the damage for each, aggregating $156.74.

(12, 13, and 14) The defendant did so build and construct the down spouts of the apartment house next to the property and premises of plaintiff in such manner and in such locations so that the rainwater from the roof of the apartment house would be conducted down and emptied upon built-up ground in such manner that the rainwater from the roof of the apartment house would run onto and over the adjoining property and premises of plaintiff whenever it rains, causing same to run under plaintiff's house, into plaintiff's garage, and stand in pools after each rain; that plaintiff sustained damages by reason of the matters so found, and the damages are assessed at $100.

(15) By issue 15 the charge submits to the jury that, if the jury have found and believe from the evidence that defendant did the several things submitted in the preceding paragraphs beginning with paragraph 4 and ending with paragraph 14, "then state whether or not said acts of the defendant, or any or either of them, were done maliciously, willfully and wantonly, as such terms are defined above, to injure, vex, and harass the plaintiff? Answer 'Yes' or 'No.'" To which the jury answered "Yes."

(16) "Do you find punitive damages in this case in favor of the plaintiff and against the defendant? If so, what amount do you find and assess as such punitive damages? Answer, stating whether or not you find and assess such damages; and, if you do, answer stating the amount you so find and assess." The jury answered, "Yes; $2,000."

(17) The defendant did not, in building the apartment house on lot No. 7, extend same across the fence line as the fence line is extended in a straight line, and onto the strip of land in controversy.

To defendant's special issues submitted, the jury found: No. 1. The fence line on the west side of lot No. 7 is not now in the same location as was the fence line situated on said property on December 15, 1925. No. 2. Such fence has been moved east 2 inches.

On motion of the plaintiff, judgment was entered for plaintiff for $256.73 actual damages, and $2,000 exemplary damages; for title to the strip of land in controversy, describing same, said strip being a portion of lot No. 7, in block 13, of the University Park addition; perpetuated the temporary injunction theretofore granted; granted a mandatory injunction "to correct the two certain down spouts and prevent the running of the rainwater from the roof of the apartment house onto plaintiff's premises through said two downspouts"; ordered that Butcher remove and set back the fence as now located, and as stated in the judgment; decreed title and possession to defendant to that portion of lot No. 7, in said block 13, in said addition, as described in the judgment.

From the order of the court overruling defendant's motion for a new trial, defendant prosecutes this appeal.

### Opinion.

On the trial, plaintiff, Butcher, introduced in evidence a deed from R. M. McCallon to

Southwest General Electric Company, a corporation, and a deed from said corporation to C. W. Spreen, which deeds were muniments of title in Butcher's chain of title and upon which Butcher based his pleas of 3 and 5 year statutes of limitation. Defendant, Shuttles, duly excepted to the introduction in evidence of each of the two deeds. Thereafter Shuttles introduced in evidence a certain charter and amendments of the Waco Electrical Supply & Plumbing Company, which latter corporation changed its name to the Southwest General Electric Company, the purpose for which said corporation was organized being the "buying and selling of wares and merchandise of every description." Shuttles thereupon moved the court to strike the two deeds from the record, which motion was by the court refused. Shuttles further submitted special charges instructing a verdict in his favor, which charges were refused. Based on the above, Shuttles, by his first proposition, submits that a corporation cannot own lands where same are not necessary to enable such corporation to do business in this state, and where such land is not purchased in due course of business to secure the payment of debt, and that a conveyance to and from such corporation is void.

[1] We think it sufficient to say that the corporation's title was not void but good and binding as to all the world except the state. Schneider v. Sellers, 98 Tex. 380, 84 S. W. 417.

Butcher was permitted, over objection, to testify that when he was negotiating for the purchase of the property from C. W. Spreen "they showed me what the property was. They showed me everything under fence. They pointed that property out to me."

Propositions 2 and 3, claiming error to the introduction of the evidence, assert that a conveyance of land can be made in writing only, and oral testimony is not admissible to contradict and add to the description of the land conveyed by a written deed; that a grantee in a deed cannot acquire title to or claim 3 or 5 years' limitation on land not covered by a deed, by virtue of oral statements as to ownership and description of the property conveyed, made by the grantor in the deed who himself is a stranger to the title of the land sought to be conveyed.

The evidence was not objectionable. What we said under the first proposition is applicable under these two. It seems to be overlooked that, while the 3 and 5 year statutes of limitation were pleaded, they were not submitted as issues on the trial, and are not issues here. The statute of limitation issue presented by the record is on the 10-year statute only.

[2] The record does not sustain appellant's fourth proposition, that appellee was in possession of the strip of land in controversy for eight years only. The possession under the 10-year statute includes appellee and those under whom he claims a privity of estate. Article 5682, Vernon's Sayles' Texas Civil Statutes. Witness Popejoy testified that he bought the property in controversy in 1904, and in that year built a garage on the back end of the lot, and in that year moved on the lot; he fenced up the "whole business" in 1905; built the house Butcher now lives in in 1911 or 1912; said that from the time he moved in there in 1904 he "lived right there on that lot all the time in the garage and in Mr. Butcher's house"; witness sold to Hamilton, and Root and Johnson occupied the place for Hamilton; said "from the time I left there until the time Mr. Butcher moved there the place was occupied practically all the time;" said "at the time Mr. Butcher moved into the place all of the fence that I put around it was there except that front fence which I tore down when I built; the side of the fences were there; they did not run all the way to Herschell street, they ran within something like 50 feet, might have been closer." The evidence was sufficient to submit the issue of limitation of ten years.

Under this proposition appellant insists that appellee introduced in evidence a deed from Spreen to himself of date April 30, 1919, conveying lot 6, but in no wise conveying any portion of lot 7; that by reason thereof the record fails to disclose that appellee held any claim of right to any part of lot 7.

Appellee testified, and his evidence is not disputed, that when he bought Spreen was then occupying the property in controversy, and pointed out to him the property he was buying; that they showed him everything under fence; that they pointed that property out to him. He said the property was fenced, and made other statements as to the other improvements on the place.

The identical property occupied by Spreen had come down to him from Popejoy through several successive conveyances, each conveyance describing the land conveyed by lot and block number as lot No. 6 in block No. 13, and a part of the addition mentioned. We need not recite the various conveyances more than to say that each conveyance described the land conveyed by lot and block number as above stated, and not by metes and bounds, or otherwise more specifically locating the land conveyed.

In Bateman v. Jackson (Tex. Civ. App.) 45 S. W. 224, in a trespass to try title suit to a lot in the city of Dallas, Jackson pleaded the 3, 5, and 10 year statutes of limitation. The property was described by lot and block numbers. The point presented was that the land conveyed by Humphries, Jackson's predecessor in title, as described in the deed, was not shown to be the land claimed under the limitation plea. There it was shown that at the

time of the conveyance the property was then inclosed and used as a cow lot, and the seller put the buyer, Mrs. Jackson, in possession of the land she claimed in the suit. In writing the opinion, Judge Finley said:

"There may be some question as to the correctness of the description in the deed, but there can hardly be any question that Humphries intended to sell, and Cherry Jackson intended to buy, the land to which she was given possession," and overruled the objection presented to the court's charge submitting the issue to the jury.

See, aso, Johnson v. Simpson, 22 Tex. Civ. App. 290, 54 S. W. 308, and Morrison v. Bennette (Tex. Civ. App.) 228 S. W. 307.

[3] We are not unmindful of the general rule stated in C. J. vol. 2, p. 91, par. 96, to the effect that possession cannot be traced to make out title by prescription where the deed under which the last occupant claimed title does not include the land in dispute, and where it must appear that the particular premises were embraced in the deed in whatever form it may have been made. But, as stated in the succeeding paragraph, there are exceptions to the rule. One exception is that, though the land in dispute was not included in the deed, that fact will not of itself operate to deprive the grantee's possession of the attribute of privity where there was a parol delivery of possession. An actual transfer of an adverse possession is necessary to attribute privity where the land is not included in the deed. In R. C. L. vol. 1, p. 719, par. 33, under "Adverse Possession," it is said:

"Where the owner of a tract of land occupied other property, adjacent thereto, by adverse possession, it is not material that, in selling the whole, the land claimed by adverse possession is not described in the conveyance."

We have concluded that the undisputed evidence stated in the record is sufficient to bring appellee under the exception to the general rule and within the principles above stated.

[4] Propositions 5 and 6, respectively, submit that no actual or exemplary damages lie against an owner of land for tearing down improvements of another on such land. The propositions assume ownership of the land in appellant, and on that assumption complain that submitted peremptory instructions in favor of appellant were refused. We think no error is shown.

The seventh proposition submits that, if the downspouts on a building are so situated that they empty the rainwater therefrom or to the land of the owner, though such water is conducted and emptied onto the property of an adjoining landowner, no damage will lie against such building owner, nor will an injunction lie to force the removal of such downspouts.

The mandatory injunction granted was not to remove the two downspouts as in the proposition, but "to correct the two certain downspouts and prevent the running of the rainwater from the roof of said apartment house onto the premises of the plaintiff through said two downspouts." The evidence dicloses that the two downspouts on the large apartment building were so situated that they emptied the rainwater therefrom onto the appellant's lot; that therefrom the water was conducted over and emptied onto appellee's property and stood in pools around and under his house. Appellant refers us to no case sustaining his contention.

[5, 6] It is the generally accepted view that a landowner has no natural right, by means of any building or other structure placed on his land, to discharge on adjoining premises the water which may accumulate from snow or other natural causes. Therefore one who constructs a roof in such a way that it will manifestly collect water and discharge it on the adjoining land is guilty of a trespass and liable for all damages resulting therefrom. The above statement applies, not only when water is discharged directly from the building to an adjoining land, but also where it falls first on the premises where it accumulates and then flows on the adjoining premises. R. C. L. vol. 1, pp. 374 and 375, and cases cited in notes. Such continuing trespass is considered a private nuisance, and the adjoining owner is entitled to an injunction restraining its maintenance in such manner that the rain formed thereon will not injure his property. R. C. L. vol. 20, pp. 434 and 435, and cases referred to in the notes.

[7] Proposition 8 complains of a remark made by the court to a witness in the presence and hearing of the jury. The remark was, "I permitted you to say that, and I will say this to you, Herbert, do not do it any more." The other remark made to the defendant was "not to act smart." The court allowed the bills of exception, and to the second bill the court adds:

"This bill is qualified to this extent, that the defendant was arrogant, and frequently made smart and pert answers to questions asked him by attorneys for plaintiff; consequently he had to be called down."

We have not found where the remarks of the court could have influenced the findings of the jury on any issue, and it is not claimed by appellant that they did have such effect.

We have found no reversible error, and the case is affirmed.